**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BONNIE J. LEWIS,**

                    **Plaintiff,**

         **v.**                        **6:00-CV-1225**
                                           **(GLS)**

**COMMISSIONER OF SOCIAL SECURITY**
**ADMINISTRATION,**

                    **Defendant.**
_____

**APPEARANCES:**             **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of James F. Taylor      JAMES F. TAYLOR, ESQ.
5 North Main Street
Sherburne, NY 13460

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY    WILLIAM H. PEASE
United States Attorney        Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Bonnie Lewis alleges that overuse syndrome of the upper extremities and pain have disabled her, and challenges the denial of benefits by the Commissioner of Social Security.  Having reviewed the administrative record, the court affirms the Commissioner's decision.

### II. Procedural History

After Lewis filed for disability insurance and supplemental security benefits in December 1997, her application was denied, and a hearing was conducted by Administrative Law Judge James Johnsen (ALJ).  In April 1999, the ALJ issued a decision denying benefits, which became the Commissioner's final determination when the Appeals Council denied review on June 9, 2000.[1]

On August 11, 2000, Lewis brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. The Commissioner then filed an answer and a certified administrative transcript, Lewis filed a brief, and the Commissioner responded.

---

[1]The record contains an undated copy of the Appeals Council's denial.  (Tr. 4-5) ("(Tr.)" refers to the page of the Administrative Transcript in this case).  However, the parties agree on the subject date. *Compl. ¶ 11, Dkt. No. 1; Pl.'s Br., p. 2, Dkt. No. 8; Def.'s Br. at 3, Dkt. No. 10.*

### III.  Contentions

Lewis contends that the Commissioner's decision is not supported by substantial evidence.  She claims the ALJ erroneously (1) assessed her residual functional capacity; (2) disregarded the opinion of her treating physician; and (3) disregarded her subjective complaints about pain and disabling symptoms.  The Commissioner counters that substantial evidence supports the ALJ's decision.

### IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  *See Pl.'s Br. at 2-6; Def.'s Br. at 3-8.*

### V.  Discussion

#### A.    Standard and Scope of Review

When reviewing the Commissioner's final decision under 42 U.S.C. 405(g),[2] the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citation omitted).  It

---

[2]The section 405(g) standard of review in disability insurance proceedings under Title II of the Social Security Act also applies to supplemental security income proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the analysis of supplemental income claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to disability claims under Title II.  *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

does not determine *de novo* whether a claimant is disabled.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citation omitted).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal.  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citation omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard*, 377 F.3d at 189 (internal quotation marks and citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision.  *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  It must be "more than a mere scintilla" of evidence scattered

4

throughout the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g); *Butts*, 388 F.3d at 385.  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  *See Butts*, 388 F.3d at 385;

5

*Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  *Rosa*, 168 F.3d at 83; *Parker*, 626 F.2d at 235; *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).  However, absent sufficient evidence of disability, delay alone is not a valid basis for remand solely for calculation of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) (citation omitted).

### B.    Five-Step Disability Determination

A plaintiff seeking Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits is disabled if she can establish that she is unable "to engage in *any* substantial gainful activity by

reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months ...."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)[3] (emphasis added).

The Commissioner uses a five-step process to evaluate SSDI and SSI claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.[4]  Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA).  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, she is not considered disabled.  However, if she is not engaged in SGA, Step Two

_____

[3]In addition, a claimant's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

[4]The court notes that revised versions of these sections came into effect in September 2003.  *See* 68 Fed. Reg. 51161-62, 51164 (Aug. 26, 2003).  In the revised versions, paragraph (e) clarifies the application of the residual functional capacity (RFC) determination.  New paragraphs (f) and (g), with certain modifications, correspond to the prior versions' paragraphs (e) and (f), respectively.  These revisions do not affect the Five-Step Disability Determination sequence.  The revised versions have no effect on the outcome of this case.  For considerations of uniformity, and because the ALJ's decision came under the old versions, the court retains the old nomenclature in its analysis.

requires that the ALJ determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *See Ferraris*, 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Five, the ALJ determines whether the claimant can do any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant has the burden of showing that she cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once she has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that she can perform some less demanding work. *See White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990); *Ferraris*, 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and

8

transferability of skills, to determine if she can perform other work existing in the national economy.  20 C.F.R. §§ 404.1520(f), 416.920(f); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Lewis satisfied Step One because she had not worked since June 6, 1997.  (Tr. 14, 20).  In Step Two, the ALJ determined that she suffered from overuse syndrome of the upper extremities.  (Tr. 14-16, 20).[5]  In Step Three, the ALJ determined that this impairment failed to meet or equal a combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 16, 20).  In Step Four, the ALJ determined that Lewis did not have the RFC to perform her past relevant work as a personal care aide, spooler-inspector at a factory, shirt presser, packer, or battery store counter person.  (Tr. 19, 20).  In Step Five, the ALJ found that Lewis possessed the RFC to perform the full range of light work,[6] with a limitation

---

[5]The ALJ also found that Lewis's alleged hip pain, manifesting itself for the first time three months prior to the hearing, was not supported by any medical evidence; moreover, this problem failed to satisfy the twelve-month durational requirement under the Act.  (Tr. 14-15).  Similarly, the ALJ rejected Lewis's claimed depression, of which she first complained at the hearing following questioning by her attorney, since she was never diagnosed with, treated for, or prescribed any medication for, a mental impairment.  (Tr. 16, 45-46).

[6]Light work requires an ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  In addition, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Social Security Ruling (SSR) 83-10.

on pushing and pulling less than twenty pounds with her upper extremities. (Tr. 19, 20).  Consequently, he found Lewis not disabled[7] and denied benefits.  (Tr. 19, 21).

### C.  Analysis

#### 1.   Substantial Evidence for Lewis's RFC

Lewis argues that the ALJ's determination that she had the RFC for light work is contrary to the medical record and her own testimony, and as such is unsupported by substantial evidence.  Consequently, she contends that the ALJ erred when he substituted his judgment for that of competent medical sources.  Lewis's position is without merit.

The Regulations define RFC as "what [an individual] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).  At the review level relevant here, the responsibility for determining a claimant's RFC rests with the ALJ.  20 C.F.R. §§ 404.1546, 416.946.  An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record.  *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c), (d)(3)).  Accordingly, an

_____

[7]The ALJ made this determination using Rule 202.10 of Table 2, Appendix 2, Subpart P, Regulations No. 4.

10

ALJ may not substitute his own judgment for competent medical opinion. *See Rosa*, 168 F.3d at 79; *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).  However, as explained below, such is not the case here.

Lewis contends that the ALJ's finding that she could do light work was solely based on the March 1998 RFC assessment of Dr. Putcha, a reviewing state agency physician.  (Tr. 136-43).[8]  As an initial matter, the ALJ's reliance on this RFC assessment was not improper.  "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such their opinions may constitute substantial evidence if they are consistent with the record as a whole."  *Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561 RWS, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing 20 C.F.R. § 416.927(f); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996); Social Security Ruling (SSR) 96-6p.  Here, Dr. Putcha's assessment was based on: Lewis's allegation of overuse syndrome; EMG and nerve conduction studies which showed "no definitive

_____

[8]This contention is technically incorrect, as Dr. Putcha's RFC opinion was "seconded" by another agency physician in May 1998.  (Tr. 143).

evidence" of carpal tunnel syndrome; and improving grip strength.  In addition, Dr. Putcha considered X-Rays of Lewis's right wrist and elbow which showed early degenerative arthritis, and X-Rays of the left wrist and elbow which were negative.  The doctor also considered Lewis's normal range of motion in her shoulders, elbows, forearms, and fingers.  Similarly, Dr. Putcha noted that Lewis had normal strength in her biceps and triceps ("5/5"), no muscle atrophy, normal wrist exam results, intact fine manipulation, and full grip strength ("5/5").  (Tr. 137-38; *see* Tr. 135, 147, 132-34, 149).

Dr. Putcha's determination was also consistent with the January 1998 findings of Dr. Singh, an examining physician, which revealed that Lewis, who had wrist pain on extreme range of motion, retained full grip strength; normal range of motion in her upper extremities and spine; and intact bilateral fine manipulation.  Dr. Singh's examination also showed negative Phalen's test[9] and Tinel's sign[10] bilaterally, absence of cervical spine pain or spasm, as well as normal and symmetrical reflexes in her upper

---

[9]A test used to detect carpal tunnel syndrome.  *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 985 (28th ed. 1994).

[10]A tingling sensation indicating a partial lesion or beginning regeneration of the nerve. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1527 (28th ed. 1994).

extremities.  (Tr. 132-34).

Upon review of the record, Dr. Putcha's assessment is consistent with and supported by the objective medical record, and the ALJ properly relied on it for his determination.  *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p.  Moreover, the same records were taken into consideration and amply discussed by the ALJ in his decision.  (Tr. 14-16).  Accordingly, based on the above, the ALJ's RFC determination was supported by substantial evidence and not erroneous as a matter of law.[11]

### 2.    *Treating Physician Rule*

Lewis argues that the ALJ erroneously disregarded the opinion of her treating orthopedist, Dr. Meeks.  Specifically, she claims that Dr. Meeks' opinion is supported by examination findings made during the course of her

---

[11]Lewis's remaining contentions in this section of her brief fail as either unsupported or moot.  First, she appears to argue that the ALJ selectively accepted Dr. Putcha's RFC findings, while inexplicably rejecting the doctor's determination that Lewis was capable of performing her past relevant work.  This argument has no merit, as it is the ALJ, and not the reviewing physician, who determines whether the claimant can do her prior work.  Second, Lewis appears to argue that the ALJ's determination that she was able to do light work is in conflict with his determination at Step Four that she was unable to work as a spooling machine operator or shirt presser, as the latter two are defined as "light" work in the Dictionary of Occupational Titles (DOT).  As Lewis points out, the ALJ may take administrative notice of the DOT definitions.  *See* 20 C.F.R. §§ 404.1566(d), 416.966(d).  However, the DOT provides generic occupational definitions based on certain common features of jobs available in the national economy, which may differ from the specific job descriptions and requirements in any given case.  Moreover, a careful review of Lewis's testimony shows that the jobs in question required an exertional capacity in excess of that found by the ALJ.  (Tr. 31-32).  Lewis's last argument - that she should have been found only capable of sedentary work and therefore disabled under Rule 201.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1 - is rendered moot by the court's determination that the ALJ properly found her capable of doing light work.

treatment, and that the ALJ improperly rejected the opinion based solely on the doctor's failure to cite specific findings.  Lewis's arguments are misplaced.

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).  As already noted, an ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  *Rosa*, 168 F.3d at 79.  Thus, if the treating physician's opinion is not given controlling weight, the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and

14

cannot work [is] 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133.  Thus, a treating physician's disability assessment is not determinative.  *Id.*  Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In a February 1, 1999 letter and contemporaneous examination note, Dr. Meeks opined that Lewis was "permanently markedly disabled, although she [wa]s not totally disabled in the extent that she c[ould] still take care of herself and do routine activities of daily living with adequate rest," and that he "d[id] not believe that she [wa]s able to return to gainful employment."  (Tr. 159-60, 169-71).  In a medical report dated March 1, Dr. Meeks cited positive impingement sign and negative EMG results, together with shoulder overuse syndrome, as the basis for his prognosis that Lewis was "permanently markedly disabled although not totally disabled."  (Tr.

15

161).[12]

In his decision, the ALJ correctly noted that the final determination of

disability was reserved for the Commissioner, and therefore the doctor's

opinion of total disability was not binding on him.  (Tr. 18).  The ALJ also

found that Dr. Meeks' opinion was not supported by objective findings

about Lewis's functional capacities, but was instead based on "non-

specific, broad statements" that could not serve as an appropriate or useful

medical assessment.  (Tr. 18).  While the Commissioner's Regulations

provide that the physician's  medical report "should include ... [a] statement

about what [a claimant] can still do despite [her] impairment(s)" that is

based on the physician's findings, they do not prejudice the claimant for her

doctor's failure to provide such a specific statement.  20 C.F.R. §§

404.1513(b)(6), 416.913(b)(6).  Nevertheless, to be entitled to controlling

weight, the opinion of a treating physician must be based on well-

supported, medically acceptable techniques and consistent with other

substantial evidence.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

---

[12]The record shows that the ALJ contacted Dr. Meeks and requested that he fill out a Medical Assessment to do Work-Related Activities form (a five-page document including a "medical report" page and a detailed functional assessment based on various exertional and non-exertional factors), which the doctor did not return.  (Tr. 15, 116-21).  The above letter and examination note, together with the medical report (the first page of the Medical Assessment to do Work-Related Activities form) were the only information submitted.

Thus, while the absence of specific functional findings from the doctor's report did not warrant automatic rejection by the ALJ, it significantly detracted from the weight of the doctor's opinion.  Accordingly, the ALJ was not required to accord it greater weight than he did, especially because the opinion was related to Lewis's disability status, a determination exclusively reserved to the ALJ.   In addition, the ALJ accorded greater weight to the findings of Dr. Singh and those of the state agency physicians (already discussed), which, according to the ALJ, were more specific.  (Tr. 18).  Upon review, the record supports this aspect of the ALJ's decision.

The ALJ further determined that Dr. Meeks' assessment was unsupported by the objective medical record.  (Tr. 18).  The ALJ's decision shows that he considered Dr. Meeks' examination findings in the context of Lewis's testimony and the objective diagnostic results.  (Tr. 14-18).  In July 1997, Dr. Meeks assessed that Lewis, who was complaining of right hand and arm pain, had a negative Phalen's sign on the right and positive on the left, and negative Tinel's sign bilaterally.  X-Rays of her right wrist and elbow only showed early degenerative changes.  She had normal pinprick responses, and almost full ("4/5") grip strength bilaterally.  (Tr. 146).  An October 1997 EMG study returned normal results showing no definitive

17

evidence of carpal tunnel.  (Tr. 149).  In November, Lewis had negative

Phalen's and Tinel's tests.  (Tr. 152).  In December, her grip strength had

improved, she was neurologically intact, and had full range of motion in her

joints.  (Tr. 153).[13]  Lewis continued to report pain, and her grip strength

had decreased in February and May of 1998.  (Tr. 154-55).  In August, her

manual motor testing was normal, and she had decreased deep tendon

reflexes.  (Tr. 164).  A September 1998 shoulder MRI revealed an intact

rotator cuff complex, a scant inflammation in the rotator interval, and

possible signs of adhesive capsulitis.  (Tr. 166).  On examination in

September and November 1998, Lewis had normal range of motion.  (Tr.

167-68).  In February 1999, Lewis had positive impingement sign

bilaterally, tenderness over the right lateral epicondyle, pain with resisted

dorsiflection of the right wrist, decreased pinprick sensation in her right

thumb and left index and middle fingers, and tenderness in her shoulder-

blade area.  However, she had bilateral shoulder abduction to 165 degrees

---

[13]Parenthetically, in this note, Dr. Meeks opined that Lewis had "marked partial disability" and was unemployable, but was "no longer totally disabled."  (Tr. 153).  As with other references to Lewis's varying levels of disability, this notation appears to have been made with respect to her Workers' Compensation claim, which is governed by standards different from the disability standards under the Social Security Act.  *See Gray*, 903 F. Supp. at 301 n.8 ("Workers' compensation determinators are directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.").

(despite claiming inability to do her hair), only mildly decreased grip strength with no significant pain, and grossly normal motor functions.  (Tr. 160).  Upon review, the ALJ's determination that Dr. Meeks' assessment of total disability was inconsistent with the objective medical record is supported by substantial evidence.

The ALJ also deemed Lewis's "perceived disability," cited by Dr. Meeks in support of his assessment, an improper basis for a disability determination.  (Tr. 18-19).  As the Commissioner correctly notes, this "perceived disability" falls short of satisfying the statutory standard.  In addition, the Commissioner points to an apparent internal inconsistency in the doctor's opinion.  Indeed, while stating that Lewis was "markedly permanently disabled," Dr. Meeks went on to state that she was "not totally disabled" to the extent that she could still take care of herself and do routine daily activities.  (Tr. 160).[14]  Thus, to the extent this opinion was internally inconsistent, it was properly rejected by the ALJ.

In a related argument, Lewis contends that the ALJ did not properly develop the record because he failed to seek further clarification of the

---

[14]The question arises whether Dr. Meeks was basing his opinion on Lewis's inability to perform her prior work, or instead on her inability to engage in any gainful employment. However, this question becomes immaterial where, as here, the ALJ properly rejected the doctor's opinion.

19

doctor's opinion.  Due to the non-adversarial nature of Social Security

proceedings, an ALJ has the duty to affirmatively develop the record.  *See*

*Sims v. Apfel*, 530 U.S. 103, 111 (2000); *see also Butts*, 388 F.3d at 386

(citation omitted).  It is well settled that an ALJ is not relieved of this

obligation even where the claimant is represented by counsel.  *See Shaw*

*v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal*, 134 F.3d at 505;

*Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.

1982).  In this case, the record shows that the ALJ took affirmative steps to

obtain from Dr. Meeks a detailed assessment of Lewis's functional

capacity.  (Tr. 116-21).  In response, the doctor provided a letter in the form

of an opinion and his most recent treatment note, and only filled out the

medical report part of the form requested by the ALJ.  The ALJ's attempt to

obtain the information, together with the doctor's selective response, belie

Lewis's speculative contention.  Lewis fails to explain what, if anything, the

ALJ should have done to obtain the same information Dr. Meeks had

already elected not to provide.

        Lewis next argues that the ALJ ignored the opinion of Dr. Masten, an

examining orthopedist.[15]  This contention is misplaced.  The ALJ was not required to mention or discuss every single piece of evidence in the record. *See Mongeur*, 722 F.2d at 1040;  *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *Rebeck v. Barnhart*, 317 F. Supp. 2d 1263, 1275 (D.Kan. 2004).  Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur*, 722 F.2d at 1040.  Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered."  *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted).  In this case, a careful reading of the ALJ's decision shows that he did, in fact, consider Dr. Masten's records.  (Tr. 14) (citing to the records as a basis for Lewis's diagnosis).  Thus, a conclusion that the

---

[15]Although Lewis characterizes Dr. Masten as a one-time examiner, the record suggests that she was examined by him on three occasions.  (Tr. 156, 158).

ALJ failed to review this doctor's records is unwarranted.[16]

Accordingly, based on the above, the ALJ did not err in determining that Dr. Meeks' opinion was not entitled to controlling weight, and did not improperly develop the record.

### 3.   Subjective Complaints

Lewis claims that the ALJ improperly disregarded her subjective complaints of pain, physical limitations, and other symptoms. The court recognizes the inherent difficulty in evaluating a claimant's credibility without actual physical contact.  The ALJ is entitled to evaluate a claimant's credibility and reach an independent judgment regarding subjective symptoms in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.  See Mimms, 750 F.2d at 185.  This makes the review of an ALJ's credibility assessment particularly onerous and frequently results in significant deference to the ALJ.

───────────────────

[16]Lewis appears to argue that the ALJ should have obtained a functional capacity evaluation from Dr. Masten.  In an October 1998 note, he opined that it "[l]ook[ed] like [Lewis had] permanent disability ... since 5/14/97 and some problems even well before that" and that he "would be happy to clarify her functional limitations ...."  (Tr. 158).  However, his records contain no objective findings that could constitute evidence of disability sufficient to affect the ALJ's determination.  Moreover, his opinion suggests that he was not limiting himself to assessing Lewis's medical condition and associated limitations, but was also giving considerable weight to her vocational status and ability to find alternate employment in light of her age and educational level.  (Tr. 158).

The ALJ must perform a two-step analysis.  *See* 20 C.F.R. §

404.1529; *see also Crouch v. Comm'r, Soc. Sec. Admin.*, No. 6:01-CV-

0899 LEK/GJD, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003)

(citation omitted).  First, based upon the objective medical evidence, the

ALJ must determine whether the impairments "could reasonably be

expected to produce the pain[17] or other symptoms alleged ...."  20 C.F.R.

§§ 404.1529(a), 416.929(a); *see Crouch*, 2003 WL 22145644 at *10.

"Second, if the medical evidence alone establishes the existence of such

impairments, then the ALJ need only evaluate the intensity, persistence,

and limiting effects of a claimant's symptoms to determine the extent to

which it limits the claimant's capacity to work."  *Crouch*, 2003 WL

22145644 at *10 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

---

[17]A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Pain alone may, under some circumstances, serve as the basis for establishing disability. *See Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir. 1983); *Gallagher ex rel Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983).  However, some pain does not automatically translate into disabling pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) ("disability requires more than mere inability to work without pain").  A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain.  20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b).  It does not require objective evidence of the pain itself or its degree. *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *see* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The pain must be evaluated considering the applicant's credibility and motivation as well as the medical evidence of impairment to reach an independent judgment concerning the true extent of the alleged pain, and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors, such as daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p.  Accordingly, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks, citation omitted); *see Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

The court has reviewed Lewis's testimony regarding pain, symptoms, and limitations and the summary of this testimony in the ALJ's decision. (Tr. 30-47, 14, 16); *see also Pl.'s Br. at 4-6; Def.'s Br. at 3-4*.  The ALJ found that while Lewis's impairment might be expected to produce some of

24

the pain and other symptoms alleged, her allegations about the intensity,

persistence, and limiting effects of her condition were overstated.  (Tr. 17).

Specifically, the ALJ noted that Lewis's alleged extreme weakness of grip

was contrary to objective medical findings revealing only a mild limitation in

this regard.  In addition, he discredited her claim that she was unable to

curl her hair, citing examination findings by Drs. Singh and Meeks that she

retained essentially full ranges of motion in her shoulders.  Similarly, the

ALJ found no support in the record for Lewis's alleged limitations as to

sitting, standing, and walking.

In addition, the ALJ considered Lewis's testimony that she took 1-2

pills of Darvocet a week, and 4-5 pills of extra strength Tylenol a day for

her pain.  He found that this "modest" use of medication (especially

prescription medication) did not support her allegation of disabling pain of

7-8 on a 1-10 scale.  The ALJ also noted that Lewis had denied taking any

medication during her January 1998 examination by Dr. Singh, which he

concluded was inconsistent with her allegation of disabling pain as of June

1997.  Based on the above, the ALJ determined that Lewis's allegations

regarding the frequency and severity of her symptoms and limitations were

not supported by the medical record, not consistent with the range of daily

activities she was capable of, and not fully credible.  Upon review, the ALJ

properly articulated his rationale, which is supported by substantial

evidence.  *See* SSR 96-7p.  Therefore, the ALJ properly evaluated and

disregarded Lewis's subjective complaints.

## VI.  Conclusion

After careful review of the entire record, and for the reasons stated,

the Commissioner's denial of benefits was based on substantial evidence

and not erroneous as a matter of law.  Accordingly, the ALJ's decision is

affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on

the parties.

Dated:      August 2, 2005
            Albany, New York

United States District Court Judge

26